My name is Barbara Gobin, and I represent the respondent Robert F. in the appeal of this involuntary psychotropic medication order. Today, there are three issues we would like to bring up.    The first issue is that the state did not present evidence that the guardian received written information as required by Section 102A5 of the Mental Health Code of the risk, benefits, and side effects of the proposed treatment and alternative forms of treatment. The other issue is that the state did not present clear and convincing evidence that the respondent Robert F. received this required information also. And finally, there was no testimony about two of the dosages of two of the prescribed medication. And finally, I'll address the issue of mootness to your honors. On the issue of mootness, have we had any recent decisions on one or more of these issues? Yes, to be honest, on the issue of Robert, of the respondent himself, receiving the written information that was Laura H. that was recently decided within the past year. So in one sense, we could say it's moot because it might meet the exception that we've spoken on it. On the other hand, we could say we'd like to see it again so that the message is clear. Right, and there's actually no case, to be honest, there's no case addressing the issue of the guardian receiving this written information. So that would be the public interest exception to the mootness doctrine. Is the guardian only required to receive that information if the guardian is the person consenting to the treatment? Well, according to Section 107 of the statute, the doctor has to always ask the guardian's consent for the treatment. So in every case, the guardian should be advised and offered the ability to consent. Now, if the guardian doesn't consent to it, they can file also involuntary treatment. Okay, I guess I'm confused then because wasn't this an involuntary treatment petition? Right. And if the guardian consented, why did they have to bring the petition? Because Section, for psychotropic medication treatment, it's the only really area of health law that if a guardian consents but the ward does not consent, they still have to do a petition for involuntary treatment. I call it the gothic guardian rule, you know. So that's, and that was a protection against guardians abusing their wards on these issues. So could a guardian waive the notice and consent? Because the guardian in this case, in fact, said she agreed with the treatment plan. Right. Well, I mean, the issue of 102, there hasn't been no issue of waiver of written information about the risks, benefits, and side effects and alternative forms of treatment. And I think it's, you know, the Illinois Administrative Code requires the doctors to give this written information to the guardians. And it's also within the scope of the statute, the Mental Health Code envisions the guardian receiving and fully participating in the ward's involvement in the mental health code, in a mental health proceeding. They have to receive notice at the hearing, a copy of the petition. The doctor has to, the guardian has the right to refuse the psychotropic treatment. And that's under Section 52107. If they don't have the proper information, you know, is there proper consent for treatment? I'm not going to go into that issue, but the whole thing of Section 52102 is to provide and fully inform all the parties about the risks, side effects, and alternative forms of treatment. And providing the written information to the guardian fulfills that section. It also, the state would like to say that, and also the President N. Ray, C.E., it was a Supreme Court case that validated the involuntary treatment, psychotropic treatment statute because the guardian received notice of the proceeding. So the guardian's rights are validated both by statute and precedent. The state would argue for a narrow interpretation that the guardian should only receive this written information in cases where they don't have to proceed for an involuntary medication petition if the ward agrees and the guardian agrees. And so the state would say, well, that's the only time the guardian has to receive this information. But that's, acceptance with this would kind of have a, it's not, it's contrary to kind of the plain meaning of the statute where everyone should be fully informed of the risks, benefits, and alternative forms of treatment, especially in cases where the ward disagrees with this form of treatment. And the state of Illinois actually interprets the state, the section, through its administrative code as providing this written information to the guardian. Section 59, Illinois Administrative Code 112.90, it's in my brief, I briefed the site, requires DHS doctors to provide written information to the guardian if a ward is to be administered the psychotropic treatment or ECT. Also, further in that section of the administrative code, the guardian must provide consent prior to the administration of psychotropic med administration or a petition must be filed. So to have a proper consent, one has to have proper information about the risk, benefits, and alternative forms of treatment. And, you know, acceptance of the state's argument, well, we don't have to provide this written information to cases where the ward disagrees with the treatment, would basically circumnavigate the mental health codes, procedural protections, and also of inclusion of the guardian in all aspects of this proceeding and of fully informing. But if the guardian isn't asked to consent, let's say they just go to court and seek a judicial order to administer involuntary treatment, is your position still that the guardian must be given the written information? Because isn't the court making an independent determination based on the evidence it hears in the... Right, it's making an independent determination, but under the statute, under section 107, the doctor still has to, before they proceed with it, they have to, the guardian has a right to, they have to ask the guardian if he consents to it or not. Is there any evidence in the record in this case that this guardian consented to it? Yes, she actually participated at the hearing. Right, at the trial, but I mean, other than that, her testimony said she agreed with the treatment plan, basically. Right, but there was no, she said, I talked with the doctor about it, but there's no evidence that she received the written information about the treatment, or if there was any alternative forms of treatment, or what's the prognosis with the treatment. So, if before the petition is filed, the guardian consents, but the respondent still objects... They still have to proceed with the hearing. Then you proceed with the hearing, and you give the notice. In this case, it would appear that the petition was filed, the guardian wasn't really asked to consent in any formal way, so you proceed with the hearing. Proceeded with the hearing occurred, and the guardian testified. Sounds like a good idea to me. Right. In both instances, your position is, there ought to be evidence in the record that written notification of the benefits and the risks and the treatment should have been provided both to the respondent and the guardian. So we don't skip the guardian, even if they stand up and say, this is the greatest thing ever, he really needs this medication. And actually, it would make the state's case stronger, because it could say, did you provide written information about the proposed treatment to you, and the guardian could say yes, and did you review this, and the guardian could say yes, and did you consent for treatment, and they could say yes after I reviewed it. So it's not a heavy burden for the state, the state's required to do this, it's within the code of providing, to do a valid consent to show that they received the written information. You've indicated there's no case on this at all, that you could find. Right. But it's within, if you look at the whole scheme of the mental health code, of how they would like to promote guardian's participation. Of how a doctor, they have to ask the guardian any time they have to administer the psychotropic medication, even if the ward agrees to it, or disagrees, you know, whether they consent to it. You know, saying that they don't receive, that only the ward receives the information, not the guardian. It just doesn't make sense, because really the guardian is, if the person's, to be honest, you know, DD, you know, it would make sense for the guardian to receive the written information. You know, and the guardian, if they receive the written information, could persuade the ward, hey, take this medication, I reviewed this, you know. So I think it would benefit all parties. It's not a heavy burden for the, the state's required to do this, it's required under the administrative code. You know, and here there was just no... Well, they'd actually have to have two copies of the document. One to give to their respondent, and one to give to the guardian. That probably would be an almost insurmountable burden for... Yeah. Some prosecution offices, in mental health cases anyway. I'm sorry, I... But I think it fits with the code of fully informing all parties of this. And another argument I would like to raise is that the evidence that presented did not support what the order authorized. You know, as you all know, a petition does not equal evidence, is not evidence. And the state has a duty to present clear and convincing evidence. And there's clear precedent, repeatedly when the state fails to testify to the medications, you know, the order can't... The order is then not supported by the testimony. So orders for psychotropic medication have been reversed when there's no testimony or evidence on the record about the medications that are being used. Here there was no evidence presented of two of the medications about Pugenin and Haloperidol. And here it's a little bit different, too. The petitioning doctor is different than the testifying doctor. And... But even though there was the absence of the testimony about dosages about two of these medications,  there was no testimony about the dosages and the administration of all the medications. So the only thing... Just to be honest, the only thing different from this, from other cases where... In the other cases, the doctors failed to testify about all the medication dosages. Here it's some of the dosages, but it's two out of the five medications. So, you know, and this kind of is... The state will argue, well, we can infer that this is the evidence by looking at the petition and so on, but this doesn't meet the clear and convincing evidence standard. And also my final argument, and I think this court has addressed this, is that the state failed to provide clear and convincing evidence that the respondent received information about the risk and benefits of the treatment as well as the alternatives to the treatment. As you well know, by the recent opinion of Laura H., written information about the risk, benefits, and alternative forms of treatment needs to be presided to the respondent. Here, the doctor simply confirmed that written information about side effects was given to the person. And... But, you know, if you want to review this by manifest weight of evidence standard, here there was no evidence presented that received written information about the benefits of treatment or the alternative forms. Can I ask you a practical question? Why isn't the written form that's provided to the respondent made a part of the record? If it was in the record and somebody testified, this is the form I handed to them, we could see what information is being provided. Why isn't that made a part of the record? Do you know? I know you're probably not down there in the chalkboard, are you? No, not on that one. I mean, sometimes... I practice down at Madison County. We sometimes do that. We give hospitals checklists of what to do in testifying doctors. But, you know, sometimes the doctors are so... I mean, speaking off the cuff, they're so busy, they don't focus on this issue. They sometimes say, well, the nurse provided it. But isn't it somewhere in their chart? So couldn't it be obtained by the prosecution or by the respondent's attorney and made a part of the record at the hearing? And then it's there, and we all know what he got. He well could have been provided with that information in this case, but we don't know because the doctor only testified that he informed them of the risks. Or, excuse me, side effects. And the odds are, and again, of course, this is speculation, the odds are it's probably more likely true than not that he was given the written form. It's just that no one bothered to ask that question or bothered to testify to it at the hearing. They just left that out because they didn't think it was important. Or they overlooked it. Right. And probably, just to be honest, from practice, and this was hard, I had to actually help them draft this, was that they just give them information about the side effects and not the benefits and prognosis. And alternatives. And I actually mentioned this in my reply about the guardian issue, but the Illinois Administrative Code requires DHS doctors, which this is one, to give written information about the nature and purpose of the proposed treatment, whether the proposed treatment requires periodic testing, the side effects and risks, and the prognosis and risk without the proposed treatment. You know, they don't, you know, giving written information about side effects of medication would scare someone into not taking the medication. And that's why it's important to get written information about the benefits and why alternative forms of treatment don't work. You know, counseling alone won't work on your case because these are the reasons why. If they just receive written information about the side effects, you know, someone who's paranoid would get more paranoid. And often times, though, it seems to me in the cases that I've reviewed since I've been here, people with mental illness don't want to take the drugs. And they've got their mind made up they're not going to take the drugs. And often times the doctor testifies they can't understand at this point why the medication would be helpful to them. And there is that exception in the code that you have to give them the information to the extent that they can comprehend it, basically. And in this case, this person was resistant and... Now sometimes they, in some cases that don't go to trial, you know, sometimes the doctor then dismisses it, you know, they give the medication on an emergency basis, the patient receives the written information, and they start to continue to do the treatment, and the doctor then dismisses the medication because the patient starts to take the medication. Do you have any further questions? Thank you. May I please have the floor? First, I would state and contend that this case is moot pursuant to the Supreme Court case Alfred H. H. The arguments here are basically sufficiency of the evidence arguments. And Alfred H. H. is clear that sufficiency of the evidence arguments don't really have any future value in other proceedings. The public interest exception requires that any future order for the involuntary administration of medication would have to be based upon the testimony concerning the current condition of respondent's illness and a fresh evaluation of respondent's mental state. Because of this factual nature, it's unlikely that a determination in this case could have an impact on future litigation. And same goes for the capable of repetition exception. Since it is the sufficiency of the evidence argument, the standard there is respondent has to establish Yeah, but it's the sufficiency of the evidence on a procedural matter, not on sufficiency of the evidence about the condition of this particular respondent. It's something that we've already ruled upon, in fact. So we've already found an exception to Alfred H. H. provided in writing? Yeah. We said we understand this person is ill, they probably need the medication, but jump through the hoops. The hoops were created by the legislature. And it's insulting to even say jump through the hoops because that makes it sound like it really doesn't matter and it's just a formality. It isn't just a formality. It's a procedure that's meant to be followed to guarantee that liberty interests of those less fortunate than us who need these services actually are provided them in an appropriate and honest way that meets their liberty interests and meets their human rights interests. So, in a sense, I don't want to cut you off, but in a sense we've ruled on this. We've said in an earlier case that this notice is required. So, Mootness isn't going to fly today? I would consider this, since it was recently decided upon, and that's the only issue that Mootness could be argued. It could in that sense. And we'd have to say, well, we think we need to say it again so that everybody understands we really meant what we said. Fair enough. It hasn't worked for the last couple of decades. It seems to be that way. And I understand, counsel, that you're not present and you have no particular responsibility. I'd like to send her over to the state's attorneys around here to get that checklist out. Assuming the case isn't Moot, I'm aware, the state's aware of the decision in Laura H. And we'd submit that the facts in this case are distinguishable. In Laura H., it was Respondent's first time being treated at McFarland. And it was her first time in an involuntary administration hearing. Here, Respondent had received the same drugs, had been in McFarland before, and had received the same involuntary administration of medication in the past. Also, I would contend that the information in the Laura H. case stated that there was a stack of papers in the common law record that were basically thrown at the Respondent and then the doctor left to never really explain it. In this case, there was testimony that the risks and benefits were explained several times to the Respondent and that he was given a written list of side effects. Also, there was the petition that stated the exact statutory requirements that he was provided the risks and benefits in writing. And that was signed by a doctor as well. Of course, Laura H. mentions that the common law record is not admitted and the evidence can't be considered evidence. But the claim in this petition right along with the testimony, I think, can lead to a reasonable inference that Respondent lacked the capacity in the involuntary administration was authorized here. As for the guardian issue, the plain language of 2-102 states that the guardian only needs information if the state is seeking their consent. The exact language is, if the recipient is under guardianship and the guardian is authorized to consent to the administration of psychotropic medication pursuant to subsection C of section 2-107.1 of this Code, Physician, Cell Advisor, Guardian and Writing. That section, section 107.1c states a guardian may consent to the administration of psychotropic medication or electrophoresis therapy to a non-objecting recipient. It states not saying that it's only in situations where the ward and the guardian agree on the medication. It's saying that this section is presumably used when a legal guardian has the sole responsibility to decide whether the recipient should get the medication instead of the guardian. This is the only way it's logical to even have that language in there pursuant to subsection C of section 2-107.1 of this Code. Here there is obviously not a non-objecting recipient. There is testimony that he rejected the psychotropic medication and since the state sought the administration of medication through the regular section 107.1a-5, which is the long list of I think it's A through G basically that he lacked capacity deterioration in his ability to function, serious mental illness, benefits of the treatment that way the harms of the less restrictive service have been explored and found inappropriate. All of those were proven at the hearing by almost the exact language of 107.1a-5-4 is that section. That's the only logical reason that the guardian would be required by statute to have the in writing of the side effects, risks, benefits, alternatives. And about the alternatives here, again Laura H. said that the alternative to the prose treatment had to be in writing. Here there was testimony that the doctor explored other treatment services and they would have been inappropriate based on the respondent's lack of compliance with those forms of treatment. And additionally there was testimony that less restrictive services were explored and deemed inappropriate for the respondent at that time and that medication was the least restrictive alternative available. Again this wasn't the first time a respondent was in the mental health center, this wasn't his first involuntary administration hearing, and this wasn't his first time using the drugs. There was testimony that the doctor observed the respondent when he was on drugs and observed how he acted when he wasn't on the drugs. So I would submit that if there is no feasible alternative to the proposed treatment that there can be no writing, you can't make one up, especially since Dr. O'Leary's testimony was based on the previous observations of the respondent both on the drugs and off the drugs. The only side effect Dr. O'Leary said that the respondent suffered from on these drugs was the haloperidol and that was a mild side effect I think of muscle spasms, which is what the cojunctin was for. I would disagree with the respondent on the fact that two of the five drugs weren't testified to about the dosage. The only one that wasn't specifically testified to regarding the dosage was cojunctin and this was testified but he did testify to the recommended dosage of lorazepam, which was the alternate choice recommended in the exact same dosage in both the order and the petition. Also there is testimony that cojunctin was recommended only to treat the mild side effects of the recommended antipsychotic haloperidol. Again apparently from the testimony that cojunctin is more of a sedative instead of an antipsychotic. Keeping in mind the respondent had taken all these medications before and Dr. O'Leary had observed him on these medications and off, it was reasonable for the trial court to infer that the doctor's recommended dosage for cojunctin was consistent with the petition, especially since every single one of his other recommendations was consistent with both the petition and the order. And unless you have any more questions for me. I think not. Thank you. Just a couple points. I won't take up too much of your time. Just to argue that really the procedural protections of the code should not be lessened because of repetition. I mean just because Mike Klein is a frequent guest of the McFarland Mental Health doesn't mean that he should be not entitled to all the written information. Furthermore, the testimony presented about the written information, the testimony only said that written information about the side effects were given and the petition itself said that written information was about the benefits and risks, but it did not mention anything about alternative forms of treatment. Could you address the argument that the state made when they say, you know, if you look at subsection C, that talks about a consenting guardian with a consenting respondent. Right. And when you look at A5, it's talking about if the recipient is under guardianship and the guardian is authorized to consent pursuant to subsection C, then the physician shall advise the guardian in writing. I think what they mean by that, I mean, is that authorized to consent is that it's a guardian who has the power to do the healthcare versus, a guardian of a person versus a guardian of the state. Where, you know, some guardians don't have, so if the guardian has the power to consent to medication, then the guardian should have the written information, where some guardians are just guardians of the state and not of a person. I know that's kind of... But when you look at this provision in A5, isn't it really saying if you have a consenting respondent and you want the guardian to consent to his treatment, then you have to give that written notice of the side effects and benefits and alternatives to the guardian. But if it's a consenting guardian and a non-consenting respondent, you have to go through the court process to get a court order to administer medication. Isn't that what this section is saying? Right. I mean, but I would say that if they wanted the guardian only to receive the written information if it's administered in that situation, they would put administered and not authorized. Because authorized deals with the powers of what the guardian has over the ward. Where, you know, if the legislature wanted the guardian only to receive the written information in cases where the I think they would put the more direct term administered instead of authorized. I know I'm splitting up the straws here, but you know, and that actually kind of like once the state pointed that out, I was like, oh. But looking at the whole purpose of the code, the guardian always has to be informed and consented for treatment even if the ward does not agree to it. Even if they file a 107.1 petition, the before the petitions filed, the doctor is required to ask the guardian if he can consent to it. Because then they have to bring it up to the court that the guardian does not consent to this. So for the guardian to make a proper informed consent, they need this written information. I know I'm splitting the straws here. I would agree with you that it would be a good practice and that they probably do require it so that they can make an informed decision. But the issue is does the statute require it? And I would say that the statute says authorized instead of administered under. And authorized I think does the powers and the duties of what the guardian has where it's guardian of the state over instead of guardian of the person. But it's the guardian is authorized to consent to the administration. So administered is in there. But I was thinking, yeah, I know it sometimes, I wish the laws were sometimes clearer about this. But I think the spirit of the Mental Health Code is that all parties should be informed of this information. And it's not the state, the doctor is required by, the state of Illinois through its administrative code interprets it that the guardian needs this written information. It's required. Thank you counsel. We'll take this matter under advisement.